## THE ELENA G.

### NEAL v. THE ELENA G.

(District Court, E. D. Pennsylvania. April 24, 1894.)

No. 11.

SALVAGE—COMPENSATION.

    A bark laden with petroleum was moored at a wharf when an explosion occurred near by setting fire to the wharf and covering the water with burning oil. The bark and cargo, worth about $35,000, were saved by the exertion of five tugs, worth $53,000, at a risk to the tugs and their crews. *Held*, that $6,800 was fair compensation.

In Admiralty. Libel by Neal against the Elena G. for salvage.

J. Rodman Paul and John F. Lewis, for libelant.

Henry Flanders and Edwd. F. Pugh, for respondent.

BUTLER, District Judge. About 4 o'clock on the morning of October 9, 1892, as the respondent lay in the river Schuylkill, at the Atlantic Refining Company's wharf (at Point Breeze) laden with a cargo of 39,641 cases of refined petroleum, moored against the bark "Felix," an explosion occurred at the Gas House wharf, a short distance above, setting fire to that wharf, and to large quantities of oil floating on the river. As the tide was down the flames were carried rapidly to the refining company's wharf, and communicated to the "Felix" and respondent, creating great alarm and danger in that vicinity. Some members of the respondent's crew went ashore to cast off her lines, but were prevented, and their return cut off, by the fire. The balance of the crew remained on board, unable, probably to get off. The flames spread rapidly, and there was great danger they would reach the cargo, and cause instant destruction of the vessel and everything on board. Oil was stored along the wharf near by, and explosions from parts of it were frequent. The situation was one of great peril to the respondent, and to everything in the immediate vicinity. The tug "McCaulley" was lying alongside the respondent when the first explosion occurred, prepared to tow her out, in pursuance of previous arrangement. She immediately endeavored to get under way; but the situation was such (the respondent's entanglement with the "Felix," a large vessel, and being, probably, aground, with the water very low,) that it was impossible to do more without aid than pull her a very short distance from the wharf. Persistence in the effort would, I believe, have been useless to the respondent, and dangerous to the tug. After parting the hawser three times, and seeing other vessels in danger lower down, she went to their aid, returning after the lapse of probably, 20 minutes. The tug "Juno," which had been seriously on fire, was then present throwing water on the burning barks. The "Mary Louise" and the "Churchman" arrived soon after, and the "Bradley" a little later. The "McCaulley" was again made fast to the respondent, and with the assistance of the other tugs, succeeded in pulling her and the "Felix," (still firmly attached) across the channel; where they were held in place until the fire was extinguished. Sub-

sequently the attachment was broken, and the "Felix" soon after, sank, blocking up the passage southward.

The tugs started with the respondent up the channel, which is narrow, and in the existing condition of the water was very difficult for such towage. The tide was down, and unusually high winds had driven the water out. On the way up in search of a place of safety. the bark grounded, and could not be gotten off until the depth of channel had sufficiently increased,—24 hours later. While she' lay there, a second fire occurred below, which again threatened her destruction. The river was covered, here and there, with floating oil, which was driven about, endangering all vessels in the vicinity. The tugs fought this fire, and aided to prevent its spreading upward. As soon as the bark could be gotten off, she was taken to a point further up, and moored in comparative safety.

It may be that the services of one, or even more of the tugs might have been dispensed with. Looking at it after the event, I incline to believe they might. But doubtless this did not seem so at the time; and the respondent's officers certainly did not suggest it. All were useful. I do not think the tugs are blamable for the respondent's grounding. In considering this, and other questions respecting the conduct and services of the tugs, the peculiar situation must be kept in mind,—the condition of the channel, its shallowness and narrowness, its burning surface, the constant danger, and the prevailing alarm throughout the vicinity.

Soon after the fire started at the refining company's wharf, engines of the city fire department arrived on the street near by, and commenced throwing water. The situation was such, however. that I think but little of it reached the respondent; and I believe she and her cargo would have been lost if these tugs, or others, had not gone to her assistance. I have not attempted a minute statement of the facts. The respondent's admission of responsibility for salvage services has rendered this unnecessary. The question of amount only is open for consideration.

As we have seen the services involved serious danger to the tugs and their crews. They were highly meritorious, efficient and successful. There is no rule by which their value can be measured with exactness. The general rule on the subject is well understood, and is well stated by Mr. Justice Bradley in The Suliote, 5 Fed. 99—

"Salvage should be regarded in the light of compensation, and not in the light of prize. The latter is more like a gift of fortune conferred without regard to the loss or sufferings of the owner. who is a public enemy, whilst salvage is the reward granted for saving the property of the unfortunate. * * * The courts should be liberal but not extravagant; otherwise that which is intended as an encouragement to rescue property from destruction may become a temptation to subject it to peril.".

Still these are but suggestions to aid the judgment. No two cases are alike, and no one is therefore a precedent for another. It is important of course, to avoid extravagance, but it is equally important not to withhold from dangerous and meritorious services their just reward. The difficulty in all cases is to determine what is a just, and not an extravagant, reward. At best the conclusion

reached is but an intelligent guess; and different minds will guess differently.

The respondent and her cargo were worth about $35,000; the tugs were worth $53,000. After full and anxious consideration I have concluded to award the libelant $6,800. This may be too high or too low; but it is the best I can do. I am fortunately relieved from determining how this sum should be apportioned among the tugs. I must, however, apportion the payment between the bark and cargo, as the owners are different. I find the value of the former to be $9,500, and of the latter $24,000. Each will therefore bear and pay its proportion of the $6,800 according to this valuation.